UNITED STATES DISTRICT COURT
DISTRICT OF PUERTO RICO

**OK RESORTS OF P.R., INC.; et al.,**

**Plaintiffs,**

**v.**

**CHARLES TAYLOR CONSULTING MEXICO, S.A. DE C.V.; et al.,**

**Defendants.**

Civil No. 19-1889 (GAG)

**OPINION AND ORDER**

OK Resorts of Puerto Rico, Inc. ("OK Resorts"), Executive Fantasy Hotel, Inc. ("Executive Hotel"), and Riverside Resort, Inc. ("Riverside Resort") (collectively "Plaintiffs"), filed the above-captioned suit against Charles Taylor Consulting Mexico, S.A. de C.V., and its agents, Pierre Barron and James Heiden ("Charles Taylor"), as well as Universal Insurance Co. ("Universal") and Integrand Assurance Co. ("Integrand") (collectively "Defendants") alleging violations under the Racketeer Influenced & Corrupt Organizations Act ("RICO"), 18 U.S.C. §§ 1961-1968, and the Commonwealth of Puerto Rico's Insurance Code ("Law 27"), P.R. LAWS ANN. tit. 26, §§ 2701-2740.  (Docket No. 4).  Plaintiffs seek damages from insurance policies in the aftermath of Hurricane María.  Id.

Pending before the Court are Charles Taylor's and Universal's respective motions to dismiss for failure to state a claim upon which relief can be granted, FED. R. CIV. P. 12(b)(6). (Docket Nos. 15; 18).  Specifically, Defendants contend that Plaintiffs (1) lack standing to assert RICO claims and that Plaintiffs fail to show: (2) a pattern of racketeering activity; (3) the existence of a distinct enterprise; and (4) a conspiracy.  Id.  Plaintiffs opposed.  (Docket No. 27).  Per leave of Court, Charles Taylor and Universal replied.  (Docket Nos. 33; 40).

**Civil No. 19-1889 (GAG)**

After reviewing the parties' submissions and applicable law, the Court **GRANTS** Defendants' motions to dismiss for failure to state a claim at Docket Nos. 15 and 18.

I. <u>Factual and Procedural Background</u>

*a. The insurance policies*

On February 2017, Integrand issued two insurance policies to OK Resorts and Executive Hotel, respectively, and Universal issued one insurance policy to Riverside Resort.[1] (Docket Nos. 4 ¶ 25; 15-1, 15-2; 18-1). Integrand retained Charles Taylor as a claims' adjuster. (Docket Nos. 4 ¶ 29; 15-3). These insurance policies provided coverage against certain events such as damages to Plaintiffs' businesses. (Docket No. 4 ¶ 26). Among the events covered by the insurance policies are "winds, rain and other conditions . . . caused by hurricanes. . . ." <u>Id.</u> ¶ 28.

As a result of Hurricane María, Plaintiffs suffered damages covered by the insurance policies totaling $10,100,000.[2] <u>Id.</u> ¶ 30. Plaintiffs timely filed their claims with Integrand and Universal. <u>Id.</u> Plaintiffs allege Defendants refused to pay or resolve their claims and that they had no other recourse but to file this action. <u>Id.</u> ¶ 31. Plaintiffs further allege that on March 9, 13, and July 11, 2018, as well as other dates, they received communications from Defendants regarding the aforementioned insurance policies. <u>Id.</u> ¶ 62. These communications were received by Plaintiffs via e-mail or delivered by the United States Postal Service ("USPS"). <u>Id.</u>

---

[1] Integrand issued insurance policy no. CP-028100128-01-000000 to OK Resorts and insurance policy no. CP-028100139-01-000000 to Executive Hotel. (Docket Nos. 15-1, 15-2). Universal issued insurance policy no. 09-560-000544340 to Riverside Resort. (Docket No. 18-1). All three insurance policies covered the period when Hurricane Maria struck starting from March 1, 2017, until March 1, 2018. (Docket Nos. 4 ¶ 25; 15-1, 15-2; 18-1).

[2] The total amount of damages—$10,100,000—was obtained by adding the agreed values for each property under the insurance policies, which were $4,300,000 for OK Resorts, $3,000,000 for Executive Hotel, and $2,800,000 for Riverside Resort. (Docket No. 4 ¶ 30, n. 1).

**Civil No. 19-1889 (GAG)**

   *b. Becher discovery*

   While these motions to dismiss were pending, Plaintiffs filed a motion for <u>Becher</u> discovery, <u>New England Data Serv., Inc. v. Becher</u>, 829 F.2d 286, 290 (1st Cir. 1987). (Docket No. 35). Universal opposed Plaintiffs' request. (Docket No. 43). The motion was referred to Magistrate Judge Camille L. Vélez-Rivé, who granted the motion allowing Plaintiffs to conduct the depositions as requested. (Docket Nos. 42; 44).

   On August 31, 2020, the Court approved and incorporated by reference the proposed discovery timetable submitted by the parties. (Docket No. 64). The following deadlines were set: September 11, 2020, deadline to send written discovery requests; September 18, 2020, deadline to respond to written discovery; October 28 and November 5, 2020, depositions of "insurance companies' officers, which plaintiffs will indicate with sufficient time pursuant to the rules," and; November 6, 2020, depositions of "defendant public adjusting companies' principals, represented by brother counsel[.]" (Docket No. 63). While these deadlines were running and since they elapsed, Plaintiffs did not seek to amend their complaint or supplement their briefs.

   II. <u>Standard of Review</u>

   When considering a motion to dismiss for failure to state a claim upon which relief can be granted under FED. R. CIV. P. 12(b)(6), the Court analyzes the complaint in a two-step process using the current context-based "plausibility" standard established by the Supreme Court. <u>See</u> <u>Schatz v. Republican State Leadership Comm'n.</u>, 669 F.3d 50, 55 (1st Cir. 2012) (citing <u>Ocasio-Hernández v. Fortuño-Burset</u>, 640 F.3d 1, 12 (1st Cir. 2011), which discusses <u>Ashcroft v. Iqbal</u>, 556 U.S. 662 (2009) and <u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. 544 (2007)). First, the Court must "isolate and ignore statements in the complaint that simply offer legal labels and conclusions or merely rehash cause-of-action elements." <u>Schatz</u>, 669 F.3d at 55. A complaint does not need detailed factual

**Civil No. 19-1889 (GAG)**

allegations, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Iqbal, 556 U.S. at 678. Second, the Court must then "take the complaint's well-pled (i.e., non-conclusory, non-speculative) facts as true, drawing all reasonable inferences in the pleader's favor, and see if they plausibly narrate a claim for relief." Schatz, 669 F.3d at 55. Plausible means something more than merely possible, and gauging a pleaded situation's plausibility is a context-specific job that compels the Court to draw on its judicial experience and common sense. Id. (citing Iqbal, 556 U.S. at 679). This "simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of" the necessary element. Twombly, 550 U.S. at 556.

"[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" Iqbal, 556 U.S. at 679 (quoting FED. R. CIV. P. 8(a)(2)). If, however, the "factual content, so taken, 'allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged,' the claim has facial plausibility." Ocasio-Hernández, 640 F.3d at 12 (quoting Iqbal, 556 U.S. at 678).

Moreover, at the motion to dismiss stage, "the Court may consider: [1] 'implications from documents' attached to or fairly 'incorporated into the complaint,' [2] 'facts' susceptible to 'judicial notice,' and [3] 'concessions' in plaintiff's 'response to the motion to dismiss.'" Nieto-Vicenty v. Valledor, 984 F. Supp. 2d 17, 20 (D.P.R. 2013) (quoting Schatz, 669 F.3d at 55-56). At the Court's discretion, if it chooses to consider materials outside the pleadings, a motion to dismiss should be converted to a motion for summary judgment under FED. R. CIV. P. 56. See Trans-Spec Truck Serv., Inc. v. Caterpillar Inc., 524 F.3d 315, 321 (1st Cir. 2008). Under certain "narrow exceptions," some extrinsic documents may be considered without converting a motion to dismiss into a motion

for summary judgment. Freeman v. Town of Hudson, 714 F.3d 29, 36 (1st Cir. 2013) (citing Watterson v. Page, 987 F.2d 1, 3 (1st Cir. 1993)).  These exceptions include "documents the authenticity of which are not disputed by the parties; . . . official public records; . . . documents central to plaintiffs' claim; [and] . . . documents sufficiently referred to in the complaint." Freeman, 714 F.3d at 36 (quoting Watterson, 987 F.2d at 3).

In addition, if the complaint alleges fraud, FED. R. CIV. P. 9(b) requires that circumstances constituting fraud or mistake shall be stated with particularity.  The purpose of Rule 9(b) is to make defendants aware of the precise misconduct with which the plaintiff charges them, and further, to prevent defendants from "spurious charges of fraudulent behavior."  Lynn Zareas v. San Martin, Civil No. 05-1384 (GAG), 2005 WL 8168025, at *1 (D.P.R. Oct. 10, 2005); see also Micro-Medical Industries, Inc. v. Hatton, 607 F. Supp. 931, 936 (D.P.R. 1985).  Generally, in order to meet the heightened pleading requirement of Rule 9(b), plaintiff must state the time, place, and content of the alleged misrepresentation perpetuating the fraud. See Ahmed v. Rosenblatt, 118 F.3d 886, 889 (1st Cir. 1997).  However, the First Circuit acknowledges that "it will often be difficult for a plaintiff to plead with specificity when the facts that would support her claim are solely in the possession of a defendant . . . ." Cordero-Hernández v. Hernández-Ballesteros, 449 F.3d 240, 244 (1st Cir. 2006) (citing Becher, 829 F.2d at 290); see also Lynn Zareas, 2005 WL 8168025, at *1.  A Court "faced with an insufficiently specific claim may permit limited discovery in order to give a plaintiff an opportunity to develop the claim and amend the complaint." Cordero-Hernández, 449 F.3d at 244 (citing Becher, 829 F.2d at 290).

III.   Discussion

Plaintiffs bring this action seeking redress for Defendants' allegedly illegal RICO acts under 18 U.S.C. §§ 1962(c) and 1962(d).  (Docket Nos. 4 ¶¶ 33, 56-77).  Plaintiffs allege that Defendants

knowingly associated-in-fact and conspired between themselves to form a separate, overarching enterprise for the purpose of conducting a scheme of defrauding Plaintiffs—as well as other unnamed insurance policyholders—out of their entitled payments from insurance policies after Hurricane María struck Puerto Rico.  Id. ¶¶ 9, 34, 39.  The scheme to defraud money allegedly consists of the following:

> (a) claim delay; (b) not conducting a full and prompt investigation; (c) not treating the policyholder with good faith[]; (d) looking for ways to deny, reduce or delay full recovery to the Insured; (e) holding back and failing to pay portions of claim clearly owed; (f) not adjusting the claim and evaluating the loss property, promptly and fairly to provide full and prompt indemnity to the Insured; (g) failing to implement proper standards for the adjustment and investigation of claims; (h) not training, supervising or managing adjusters properly so that prompt and full payments are made, but rather placing the company's interests before the policyholder's interests; (i) establishing severity control initiatives and otherwise establishing a culture of not fully and promptly paying claims following losses; (j) failing to pay the full amount of the Insured's damage despite knowing it must do so; (k) failing to notify the Insured of their right to mediate their claim pursuant to [Law 27] § 2716a.

Id. ¶ 35.

Using this alleged scheme, the enterprise embezzles money for the pecuniary benefit and economic interest of Defendants, who are members of the enterprise.[3]  Id. ¶¶ 35, 39-43. Furthermore, Plaintiffs posit that the Defendants use USPS as an integral part of their scheme for billing of the insurance.  Id. ¶ 36.  Plaintiffs also assert they received communications from Defendants for the purpose of executing the enterprise's scheme to defraud, in March and July of 2018 as well as other dates, in violation of the mail fraud statute, 18 U.S.C. § 1341, and wire fraud statute, 18 U.S.C. § 1343.  Id. ¶ 62.

In support of dismissal, Charles Taylor contends that Plaintiffs: (1) lack standing to assert RICO claims and (2) fail to show a pattern of racketeering activity under 18 U.S.C. § 1962(c).

---

[3] The other members of the enterprise are Triple-S Ins. Agency, Inc., MAPFRE/PRAICO Ins. Co., Pierre Barron, James Heiden, and other unnamed and unknown individuals.  (Docket No. 4 ¶ 40).

(Docket No. 15 at 19-25).  Meanwhile, Universal argues that Plaintiffs fail to show: (3) an enterprise distinct from the Defendants (as well as a pattern of racketeering activity) under 18 U.S.C. § 1962(c) and (4) a conspiracy between the Defendants under 18 U.S.C. § 1962(d).  (Docket No. 18 at 9-18).

        a. *RICO claims*

Under 18 U.S.C. § 1964, private plaintiffs may bring suits to enforce RICO, which outlaws participation in, or deriving benefits from, any enterprise engaged in "a pattern of racketeering activity."  18 U.S.C. 1962.  RICO proscribes three distinct patterns of activity in 18 U.S.C. § 1962(a)-(c).  In addition, RICO reads, "[i]t shall be unlawful for any person to conspire to violate any of the provisions of subsection (a), (b), or (c) of this section."  18 U.S.C. § 1962(d).

For an 18 U.S.C. § 1962(c) claim to survive a motion to dismiss, the complaint must show: "(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity."  Sedima, S.P.R.L. v. Imrex Co., 473 U.S. 479, 496 (1985); see North Bridge Assocs., Inc. v. Boldt, 274 F.3d 38, 42 (1st Cir. 2001).  In addition, the Plaintiffs "only [have] standing if, and can only recover to the extent that, he has been injured in his business or property by the conduct constituting the violation."  Sedima, S.P.R.L., 473 U.S. at 496.

A RICO enterprise is defined as including "any individual, partnership, corporation, association, or other legal entity, and any union or group of individuals associated in fact although not a legal entity." 18 U.S.C. § 1961(4).  There are, therefore, two types of enterprises: legal entities and associations-in-fact.  See Libertad v. Welch, 53 F.3d 428, 441 (1st Cir. 1995) (citing United States v. Turkette, 452 U.S. 576, 580–81 (1981)).  The enterprise is an entity: a group of persons associated for a common purpose of engaging in a course of conduct.  See Libertad, 53 F.3d at 441. The "person" alleged to be engaged in racketeering activity (the defendant, that is) must be an entity distinct from the "enterprise" under § 1962(c).  Fábrica de Muebles J.J. Álvarez, Inc. v.

Westernbank de P.R., Civil No. 09-1558 (GAG), 2009 WL 4730776, at *4 (D.P.R. Dec. 4, 2009); see also Odishelidze v. Aetna Life & Cas. Co., 853 F.2d 21, 23 (1st Cir. 1988) (citing Schofield v. First Commodity Corp. of Boston, 793 F.2d 28, 29–30 (1st Cir. 1986)). Even if an enterprise is blameworthy for the underlying actions, it cannot also be answerable as a defendant under section 1962(c). See Miranda v. Ponce Fed. Bank, 948 F.2d 41, 45 (1st Cir. 1991).

Racketeering activity includes such acts relating to mail fraud and wire fraud. 18 U.S.C. § 1961(1)(B). A successful RICO plaintiff seeking to establish a pattern must show at least two predicate acts of racketeering activity. See Efrón v. Embassy Suites (P.R.), Inc., 223 F.3d 12, 15 (1st Cir. 2000). In addition, the plaintiff must demonstrate that the "predicates are related, and that they amount to or pose a threat of continued criminal activity." See id. (quoting H.J. Inc. V. Nw. Bell Tel. Co., 492 U.S. 229, 239 (1989)). "Predicate acts can satisfy the requirement of continuous criminal activity if they either comprise a closed series of past conduct that extends over a substantial period of time or indicate a realistic prospect that they will extend indefinitely into the future[.]" North Bridge Assocs., Inc., 274 F.3d at 43 (internal quotations omitted).

To state a claim for conspiracy under 18 U.S.C § 1962(d), a plaintiff must allege that the conspirator intended to further an endeavor "which, if completed, would satisfy all of the elements of a substantive criminal offense, but it suffices that he adopt the goal of furthering or facilitating the criminal endeavor." Salinas v. United States, 522 U.S. 52, 65 (1997). A successful RICO conspiracy claim must allege that defendants knowingly entered into an agreement to commit two or more predicate crimes. See Miranda, 948 F.2d at 47-48 (quoting Feinstein v. Resolution Trust Corp., 942 F.2d 34, 41 (1st Cir. 1991) ("[E]ach defendant in a RICO conspiracy case must have joined knowingly in the scheme and been involved himself, directly or indirectly, in the commission of at least two predicate offenses."). "An actionable claim under section 1962(d) . . . requires that

the complainant's injury stem from a predicate act within the purview of 18 U.S.C. § 1961(1)." Miranda, 948 F.2d at 48.

Plaintiffs' claim under RICO section 1962(d) fails to state a legally cognizable claim. Plaintiffs assert possible RICO violations, yet none of the alleged violations constitute a viable conspiracy charge. To succeed under RICO section 1962(d) a plaintiff must show that the defendants were parties to an unlawful agreement or that defendants knowingly agreed to further its affairs through the commission of various offenses. See Miranda, 948 F.2d at 47–48; see also Fábrica de Muebles J.J. Álvarez, Inc., 2009 WL 4730776, at *5. The only potentially conspiratorial agreement alleged by Plaintiffs is between Integrand and Charles Taylor. In other words, Plaintiffs' allege that Charles Taylor and Integrand entered into an agreement for Integrand to pay Charles Taylor for the services of adjusting insurance contract claims, even though Plaintiffs claim that Charles Taylor was retained by "co-defendant insurers with the sole purpose of delaying and reneging on the claims." (Docket Nos. 4 ¶ 29; 15 at 2; 15-3). Plaintiffs fail to proffer any evidence of the Defendants agreeing between themselves to defraud Plaintiffs out of the entitled damages from issued insurance policies nor evidence of the Defendants knowingly agreeing to advance their interests by fraud after concluding Becher discovery. See 829 F.2d at 290. Consequently, Plaintiffs fail to meet the heightened pleading requirements under FED. R. CIV. P. 9(b) and thus, the Court **DISMISSES** Plaintiffs' claim under 18 U.S.C. § 1962(d).

With respect to Plaintiffs' claim under 18 U.S.C. § 1962(c), the Court addresses the issue of standing as well as the elements of enterprise and pattern that must be pleaded under RICO. As previously mentioned, "[t]o state a claim under section § 1962(c), a plaintiff must allege each of the four elements required by the statute: (1) conduct (2) of an enterprise, (3) through a pattern (4) of racketeering activity." North Bridge Assocs., Inc., 274 F.3d at 42. Furthermore, Plaintiffs "only

**Civil No. 19-1889 (GAG)**

[have] standing if, and can only recover to the extent that, he has been injured in his business or property by the conduct constituting the violation." Sedima, S.P.R.L., 473 U.S. at 496.

>   i. Standing

Charles Taylor argues that Plaintiffs' RICO claims lack standing because Plaintiffs have failed to establish that Defendants proximately caused Plaintiffs' alleged injuries. (Docket No. 15 at 19-22). "When a Court evaluates a RICO claim for proximate causation, the central question it must ask is whether the alleged violation led directly to the plaintiff's injuries." Anza v. Ideal Steel Supply Corp., 547 U.S. 451, 461 (2006). In Miranda, the Court found that there must be a causal relationship between the injury asserted and the predicate acts under the RICO statute. 948 F.2d at 46-47 (holding that injury at issue—plaintiff's loss of employment—was not itself direct result of alleged predicate act) (quoting Sedima, S.P.R.L., 473 U.S. at 497 ("Any recoverable damages occurring by reason of a violation of §1962(c) will flow from the commission of the predicate acts.")). In addition, civil RICO plaintiffs can only recover for injury to "business or property." DeMauro v. DeMauro, 115 F.3d 94, 96 (1st Cir. 1997) ("[W]e begin with the threshold issue . . . whether the plaintiff has made out a claim of 'injury' to her 'business or property,' as is required for a civil RICO damages action," under §1962(c)).

As previously discussed, FED. R. CIV. P. 9(b) requires specificity in the pleading of RICO mail and wire fraud. In particular, under Rule 9 "the pleader is required 'to go beyond a showing of fraud and state the time, place and content of the alleged mail and wire communications perpetrating that fraud.'" North Bridge Assocs., Inc., 274 F.3d at 43 (quoting Feinstein, 942 F.2d at 42). This degree of specificity is no more nor less than what the Court has required in general fraud cases. See Becher, 829 F.2d at 290. However, since it will often be difficult for a plaintiff to plead with specificity when the facts that would support her claim are solely in the possession of a

defendant, the First Circuit held that "a court faced with an insufficiently specific claim may permit limited discovery in order to give a plaintiff an opportunity to develop the claim and amend the complaint." See Cordero-Hernández, 449 F.3d at 244 (citing Becher, 829 F.2d at 290).

The threshold questions are whether plaintiff's specific allegations "make it likely that the defendant used interstate mail or telecommunications facilities," and whether this information is in the exclusive control of the defendant. Cordero-Hernández, 449 F.3d at 244 (quoting Becher, 829 F.2d at 290); see Ahmed, 118 F.3d at 890. Then, the Court makes "a second determination as to whether the claim as presented warrants the allowance of discovery and if so, thereafter provide an opportunity to amend the defective complaint," Becher, 829 F.2d at 290, but the application of this second determination is neither automatic nor of right to Plaintiffs. See Ahmed, 118 F.3d at 890. The Court advocates the use of this procedure "because of the apparent difficulties in specifically pleading mail and wire fraud as predicate acts." Becher, 829 F.2d at 290.

Here, Plaintiffs assert injuries totaling $10,100,000, which is the sum of the maximum payout under the three insurance policies—each covering one of Plaintiffs' three hotels. (Docket No. 4 ¶ 67). According to the allegations, "Plaintiffs were injured in their property inasmuch as each has been object of fraud in their claim adjustments." Id. ¶ 66. Plaintiffs posit they were fraudulently deprived of monetary property that they were entitled to under the terms of their insurance policies.

The Court makes the reasonable inference in Plaintiffs' favor that the correspondences effectively informed Plaintiffs that they were being defrauded. However, even though they cite by date and allude to the contents of three correspondences that informed them that they were being defrauded, Plaintiffs' support for their arguments of fraud consists of conclusory statements without any supporting data for their theory of a mastermind RICO enterprise that defrauds the insurance

policy holders of its members—the Defendants as well as other insurance companies—for the pecuniary benefit of these members. (Docket No. 4 ¶¶ 35, 37-44). After Becher discovery had concluded, 829 F.2d at 290, Plaintiffs failed to plead with specificity any other possible instances of mail or wire fraud, even though they were "confident that they would be able [sic] to identify a sundry of predicate racketeering acts Defendants committed through discovery in this case." (Docket No. 35 ¶ 7). Moreover, Plaintiffs failed to submit for the record the referenced letters sent by Defendants.

Consequently, Plaintiffs have not met their burden under the heightened pleading requirement for fraud under FED. R. CIV. P. 9(b) to prevail on the injury requirement for their civil RICO claim.

### ii. Distinct Enterprise

Universal argues that Plaintiffs' claim under 18 U.S.C. § 1962(c) is baseless because it has failed to identify a distinct RICO enterprise. (Docket No. 18 at 10-13). Under the law, the persons alleged to be engaged in racketeering activity must be a distinct entity. See Libertad, 53 F.3d at 442; see also Compagnie De Reassurance D'ile De France v. New England Reinsurance Corp., 57 F.3d 56, 92 (1st Cir. 1995) (citing Brittingham v. Mobil Corp., 943 F.2d 297, 302-03 (3d Cir. 1991) (noting that § 1962(c) claims may be dismissed "when the enterprise and defendant, although facially distinct, are in reality no different from each other")); Fábrica de Muebles J.J. Álvarez, Inc., 2009 WL 4730776, at *6. "In other words, because the racketeer and the enterprise must be distinct, Miranda, 948 F.2d at 45, the enterprise must be an entity separate from the named defendants who are allegedly engaging in unlawful activity." Libertad, 53 F.3d at 442.

Plaintiffs contend that it has clearly defined an associated-in-fact enterprise as required under the statute. (Docket No. 4 ¶ 37-44). From the terms of RICO, an association-in-fact

enterprise must have at least three structural features: a purpose, relationships among those associated with the enterprise, and longevity sufficient to permit these associates to pursue the enterprise's purpose. Orocovis Petrol. Corp. v. P.R. Ports Auth., Civil No. 08-2359 (GAG), 2010 WL 3419993, at *3 (D.P.R. Aug. 26, 2010) (quoting Boyle v. U.S., 556 U.S. 938, 946 (2009) (defining an association-in-fact enterprise as "a group of persons associated together for a common purpose of engaging in a course of conduct" and noting that such an "association" requires "both interpersonal relationships and a common interest.")). The existence of an "associated in fact" enterprise "is proved by evidence of an ongoing organization, formal or informal, and by evidence that the various associates function as a continuing unit." Boyle, 556 U.S. at 944-45 (quoting Turkette, 452 U.S., at 583).

In the instant case, Plaintiffs assert that the purpose of the enterprise was to "delay legitimate claims to avoid payments" and "the fraudulent sale of insurance policies[.]" (Docket No. 4 ¶¶ 41, 43, 53). However, Plaintiffs fail to show the remaining structural elements necessary to establish an association-by-fact enterprise. Plaintiffs' pleadings are generally asserted and do not satisfy the requirements under FED. R. CIV. P. 9(b) that accusations of fraud be pleaded with specificity. See Becher, 829 F.2d at 290; Lynn Zareas, 2005 WL 8168025, at *2.

Plaintiffs fail to show with specificity a relationship among those associated with the enterprise. Plaintiffs allege that an association-in-fact RICO enterprise was composed of Integrand, Charles Taylor, Universal, Triple-S Ins. Agency, Inc, MAPFRE/PRAICO Ins. Co., as well as Pierre Barron and James Heiden, who are employees of Charles Taylor. (Docket No. 4 ¶ 40). They further allege that these members of the enterprise "were systematically linked with overlapping leadership, structural and financial ties, and continuing coordination." (Docket No. 4 ¶ 39). Plaintiffs' theory is that the aforementioned insurance companies are members of a RICO cabal, "separate from and

**Civil No. 19-1889 (GAG)**

bigger than any of the [sic] Defendants and other members of the Enterprise[]" to defraud policyholders, yet they do not provide any evidence other than the fact that two insurance companies—Integrand and Universal—did not pay Plaintiffs the money they believe they are entitled to under their respective insurance policies. Id. ¶¶ 38-39.

Plaintiffs' claim that insurance companies are acting as single continuing unit to defraud policyholders is unsupported by any specific factual allegations in their complaint as required by FED. R. CIV. P. 9(b). "[A]t a bare minimum, an allegation of RICO liability under § 1962(c) must indicate how the defendant used the alleged enterprise to facilitate the fraudulent conduct." Bessette v. Avco Financial Serv., Inc., 230 F.3d 439, 449 (1st Cir. 2000). However, Plaintiffs fail to show how either Integrand or Universal use this RICO cabal between the other insurance and claim adjustment companies. Moreover, Plaintiffs' opposition to the motion to dismiss only reiterates their boilerplate allegations of their association-in-fact enterprise. (Docket No. 27 at 10). Lastly, Plaintiffs fail to amend the complaint to correct the deficiency as to the element of enterprise after the conclusion of Becher discovery. 829 F.2d at 290.

Since Plaintiffs fail to show with specificity under FED. R. CIV. P. 9(b) the existence of a distinct RICO enterprise, the Court finds that Plaintiffs have not sufficiently pleaded a RICO violation under 18 U.S.C. § 1962(c).

### iii. Pattern of Racketeering Activity

Both Integrand and Universal aver that Plaintiffs' complaint fails to plead a pattern of racketeering activity. (Docket Nos. 15 at 22-25; 18 at 14-17). A RICO claim requires the showing of at least two predicate acts of racketeering activity. See Efrón, 223 F.3d at 15; Fábrica de Muebles J.J. Álvarez, Inc., 2009 WL 4730776, at *8. "The predicate acts of which the RICO statute speaks are, basically, acts indictable under any one or more of certain specified criminal laws." Feinstein,

**Civil No. 19-1889 (GAG)**

942 F.2d at 42 (citing 18 U.S.C. § 1961(1)(B)). The mere occurrence of two or more predicate acts, however, does not constitute a pattern. See Efrón, 223 F.3d at 15. A plaintiff must also demonstrate (1) that the predicate acts are related, and (2) that they pose a threat of continued criminal activity. See Feinstein, 942 F.2d at 44. The relatedness prong can be established by demonstrating that the predicate acts "have the same or similar purposes, results, participants, victims, or methods of commission, or otherwise are interrelated by distinguishing characteristics and are not isolated events." United States v. Brandao, 539 F.3d 44, 55 (1st Cir. 2008) (quoting H.J. Inc., 492 U.S. at 240). The relatedness requirement is easily satisfied in this case since the predicate acts, as set forth by Plaintiffs, form part of a common fraudulent scheme all directed to a common end, to allegedly defraud Plaintiffs of the entitled payouts under the respective insurance policies. See, e.g., Fleet Credit Corp. v. Sion, 893 F.2d 441, 445 (1st Cir. 1990) (holding that 95 fraudulent mailings alleged by plaintiff were clearly related "because they were all part of the same fraudulent scheme"). However, in their motions, Defendants aver that the complaint is devoid of any allegation to sustain the existence of a threat of continued criminal activity. (Docket Nos. 15 at 23; 18 at 15)

The Supreme Court has identified two methods for establishing continuity: (1) the "closed-ended" approach and (2) the "open-ended" approach. See H.J. Inc., 492 U.S. at 241-42. The former refers to a closed period of repeated conduct and the latter refers to past conduct that threatens repetition in the future. Id. at 241. Under both approaches, a plaintiff must demonstrate that the threat of continued activity comes in the form of the predicate act being committed. See id. at 242. "Predicate acts extending over a few weeks or months and threatening no future criminal conduct do not satisfy this requirement. . . ." Id. However, "[t]he continuity requirement is likewise satisfied where it is shown that the predicates are a regular way of conducting defendant's ongoing legitimate business . . . ." Id. at 243; see also Fábrica de Muebles J.J. Álvarez, 2009 WL 4730776, at *8;

Giuliano v. Fulton, 399 F.3d 381, 391 (1st Cir. 2005) (dismissing RICO claim for lacking threat of repetition when complaint failed to "allege that the racketeering acts were a part of the defendants' regular way of doing business").

Here, Plaintiffs' complaint identifies three alleged predicate acts: the mail or email communications from March 9 and 13, 2018, and July 11, 2018. (Docket No. 4 ¶ 62). However, a reasonable inference can be made that these correspondences were a routine practice for Defendants to conduct their ongoing legitimate business of selling insurance and adjusting claims. Thus, despite the fact that the communications occurred only three times in a four-month span, the continuity requirement has been met for the pattern element of a RICO violation under § 1962(c).

    *b. Law 27 claims*

Based on the same set of facts giving rise to their RICO claims, Plaintiffs invoke supplemental jurisdiction under 28 U.S.C. § 1367 to assert Puerto Rico law claims of Law 27, P.R. LAWS ANN. tit. 26, § 2716a(2), (4)-(8), and (20) (Docket No. 4 ¶¶ 78-82). As such, Plaintiffs' third and final cause of action falls under the purview of state courts. See Lynn Zareas, 2005 WL 8168025, at *5. When all federal claims have been dismissed by the Court, all state claims are to be dismissed as well. United Mine Workers v. Gibbs, 383 U.S. 715, 726 (1966); see Martínez v. Colón, 54 F.3d 980, 990-91 (1st Cir. 1995). Because the Court has decided that Plaintiffs have failed to meet the pleading burdens under the federal RICO violation, the Court shall not exercise jurisdiction over the alleged causes of action falling under the Puerto Rico Civil Code and hereby **DISMISSES** the Commonwealth law claims.

    IV.   Conclusion

For the foregoing reasons, the Court **GRANTS** Defendants' Motions to Dismiss at Docket Nos. 15 and 18. Judgment shall be entered accordingly.

Civil No. 19-1889 (GAG)

**SO ORDERED.**

In San Juan, Puerto Rico this 29th of January 2021.

*s/ Gustavo A. Gelpí*
GUSTAVO A. GELPI
United States District Judge